## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAYVON E. SAPP,** | ) | **C. A. No. 10-** |
| **on behalf of himself and all others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CLASS ACTION** |
| **vs.** | ) | |
| | ) | |
| **EXPERIAN INFORMATION** | ) | |
| **SOLUTIONS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | **DEMAND FOR JURY** |
| | ) | |

## CLASS ACTION COMPLAINT

### I.  Preliminary Statements

1.     This is a consumer class action brought for willful violations of the Fair Credit
Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), against Defendant Experian Information
Solutions, Inc. ("Experian"), a national consumer reporting agency.  In violation of the FCRA,
Experian intentionally misrepresents to consumers who dispute a public record item (such as a
civil judgment, tax lien or bankruptcy) appearing on their credit reports what Defendant
allegedly did to reinvestigate the disputes.  Experian falsely tells consumers that a courthouse or
other government office purportedly assisted Experian in its reinvestigation and actually
reviewed its records to determine the validity of the disputed civil judgment, tax lien or
bankruptcy.

2.     Experian represents in a form letter that it sent to Plaintiff and thousands of other
consumers, with a statutorily-required description of its purported reinvestigation procedures
concerning the consumer's dispute of a public records item, that: (a) Experian contacted the
courthouse or other government office that stores the public record in question by letter or

electronic means; (b) Experian requested that the courthouse or other government office check their records and verify all of their information about the consumer's dispute; and (c) the courthouse or other government office actually reported back to Experian the results of whether the disputed public record is truly accurate.

3.      None of these representations are even remotely true or accurate.  Courthouses and government offices played no role in the errors that Experian makes about public records on its credit reports, such as its credit report about Plaintiff, discussed below, during its reinvestigations into consumer disputes, or at any time.

4.      Moreover, Experian actually conceals the true source of its public records information, which is another private business that traffics in credit information, not the courthouses or the government.  Experian nevertheless misleadingly directs consumers to courthouses and other government buildings in order to solve their credit reporting disputes.

5.      As such, consumers who are the subject of an inaccurate Experian public record are thrust into an endless maze of wasting time and energy in an effort to ascertain the true source of the inaccurate public record being reported about them by Experian.   Consumers can go to the actual courthouses only to learn that the courthouse has no record of the false information that Experian has placed on the consumers' reports.

6.      As discussed below, Experian's practice is carried out through a deliberate and intentional policy and practice in willful violation of FCRA section 1681i(a)(6)(B)(iii).

## II.   Parties

7.      Plaintiff Rayvon E. Sapp is an adult individual who resides in Philadelphia, Pennsylvania 19151.

8.      Defendant Experian Information Solutions, Inc. (hereafter "Experian") is a business entity that regularly conducts business in the state of Pennsylvania, and which has a principal place of business located at 5 Century Drive, Parsippany, New Jersey 07054, and is headquartered in Costa Mesa, California.

### III.      Jurisdiction and Venue

9.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331.

10.     Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### IV.      Factual Allegations

11.     In the previous two years Defendant Experian has obtained its information about bankruptcies, civil judgments and tax liens (*i.e.,* "public records" information) from LexisNexis Risk & Information Analytics Group, Inc. ("LexisNexis"), a private business that furnishes such information to national consumer reporting agencies.   LexisNexis has a principal place of business at 4 Penn Center, 1600 JFK Boulevard, Suite 1655, Philadelphia, PA 19103, and has operated places of business concerning the reporting of public records information located at 7 Foster Avenue, Suite 200, Gibbsboro, NJ 08026 and also at 300 Phillips Boulevard, Suite 500, Ewing, NJ 08618.   Agents and contractors of LexisNexis based in the greater Philadelphia area assemble select information from public records from Philadelphia courthouses, including the Philadelphia Court of Common Pleas, which is then sold to Experian for pennies.

12.     Experian has not retrieved actual public records from courthouses or actual government offices for several years.

13.     Nevertheless, on its credit reports that it provides to consumers, and which it calls "personal credit reports," Experian falsely still lists the name and address of courthouses or other government offices as the true "source" of its public records information.

14.     The public records information that Experian receives from LexisNexis is not the actual court or taxing authority records.  Rather it is a distilled version of those records, which does not include all of the information available at the actual courthouses or government offices where the true records are housed.

15.     Experian knows that that both it and LexisNexis make mistakes in the distilled public records information that is acquired for purposes of credit reporting.

16.     These distilled records frequently have numerical and other factual errors, do not contain the most updated status of the public records, invert the debtor and creditor, and are placed upon the wrong consumer's report.

17.     Indeed, Experian receives thousands of consumer disputes per month about public records items appearing on personal credit reports.   Experian deletes or modifies most of these disputed public records, which were reporting with some inaccuracy.

18.     In connection with the thousands of disputes that Experian receives from consumers about errors in the public records that it reports, Experian also receives consumer requests from thousands of consumers, including Plaintiff, for an explanation of how it conducted its reinvestigation into the consumer's dispute.

19.     These requests typically come to Experian after it has "verified" a public records item on a consumer's credit report and determined that the public records item shall "remain" on the consumer's report.

19.     Upon receiving such a request, the FCRA provides that Experian is required to provide to the consumer, *inter alia*, with:

   (iii) a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information

shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available;

15 U.S.C. § 1681i(a)(6)(B)(iii).

20.     This is a very important and congressionally-mandated notice.   It is the consumer's only opportunity to learn why a disputed public record has appeared or why it will remain on his or her credit report with Experian.

21.     Experian sends a form letter response to consumers, including Plaintiff, who make a request for the information that Experian must disclose pursuant to 15 U.S.C. § 1681i(a)(6)(B)(iii).   The form letter that it sent to Plaintiff and thousands of other consumers, with a statutorily-required description of its purported reinvestigation procedure into the consumer's dispute of a public records item, falsely states that: (a) Experian contacted the courthouse or other government office that stores the public record in question by letter or electronic means; (b) Experian requested that the courthouse or other government office check their records and verify all of their information about the consumer's dispute; and (c) the courthouse or other government office actually reported back to Experian the results of whether the disputed public record is truly accurate.   All three of these representations are patently false.

22.     Further, and despite the requirements of 15 U.S.C. § 1681i(a)(6)(B)(iii), Experian's form letter response does not identify any "business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available."   Rather, Experian directs consumers back to their personal credit reports for the furnisher's information.   On those personal credit reports,

Experian falsely lists the courthouses or other government offices as its furnisher, sometimes without even a proper address or telephone number.

23.     With respect to Plaintiff Sapp, Experian reported during June and July 2010, and thereafter, that Plaintiff had a "civil claim judgment" in the amount of "$7,808" allegedly lodged against him.

24.     Experian indicated that the $7,808 judgment was allegedly furnished to it by "PHILADELPHIA CO DISTRICT."  The only address that Experian provided for the furnishing source was "MARKET STREET PHILADELPHIA PA 19101."  Experian failed to provide any street address.  Further, Experian stated that its furnishing source had "No phone number available."  Again, these representations were false.

25.     Plaintiff in fact had no $7,808 judgment against him in June or July 2010. Although a financial institution had obtained such a judgment against him by default in or about February 2009 after it failed to serve him with its lawsuit, Plaintiff had successfully moved to open the default judgment and had obtained an Order from the Court of Common Pleas of Philadelphia County opening the default in May 10, 2010.  Thereafter the default judgment was a nullity.

26.     Pursuant to its usual policies and procedures Experian knows that open and vacated judgments are no longer valid and thus should not appear anywhere upon a credit report as an obligation of that consumer.

27.     Nevertheless, after the May 10, 2010 Order, Experian still reported on Plaintiff's personal credit report that he had a $7,808 judgment against him because it had failed to obtain accurate updated information about the judgment.

28.     In or about July 2010, seriously concerned about his credit standing and reputation, Plaintiff disputed the $7,808 judgment that Experian was still reporting against him on his personal credit report.   Plaintiff clearly stated in his dispute that the judgment was "Open, [and thus] does not exist."   Plaintiff also included in his dispute to Experian a copy of the May 10, 2010 Court Order granting his motion to open the default judgment and also granting him 20 days to file an answer to the complaint.

29.     To Plaintiff's knowledge, Experian was the only national consumer reporting agency to still be reporting at this time that Plaintiff allegedly had a $7,808 against him.

30.     With his dispute in or about July 2010, Plaintiff also asked Experian for a description of its investigation and/or verification procedures concerning the $7,808 judgment and for the name address and telephone number of its furnisher.

31.     On July 29, 2010, Experian responded to Plaintiff in writing that it had "completed investigating any item you disputed with the sources of that information."   Experian advised Plaintiff that the judgment "remains," which, according to Experian's response meant that the "item as been verified as accurate."

32.     Under FCRA section 1681c, Experian can keep an unpaid civil judgment on a consumer's credit report forever.   Thus, when Experian stated to Plaintiff that the $7,808 judgment "remains" it meant that the judgment will remain on Plaintiff's credit report for the rest of his life.

33.     Experian also responded to Plaintiff's request for a description of its reinvestigation procedures and for the contact information for its furnisher even before it had completed its alleged reinvestigation.   Experian's response to Plaintiff's request was provided in a form letter with boilerplate language dated July 21, 2010, and attached hereto as Exhibit A.

34.     First, Experian's response letter, Exhibit A, did not identify any furnisher by name, address or phone number, despite the requirements of the FCRA, which mandates that Experian provide consumers with "the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available." 15 U.S.C. § 1681i(a)(6)(B)(iii).

35.     Rather, Experian's response form letter says: "Please refer to your original personal credit report for the business name or public records office name, address, and phone number (if available) of the source of the information."

36.     On Plaintiff's personal credit report, Experian nowhere mentions that LexisNexis is the source of its information, nor does it provide any address or telephone number for LexisNexis.

37.     Rather, Experian falsely identifies its furnishing source, as required under 15 U.S.C. § 1681i(a)(6)(B)(iii), to be "PHILADELPHIA CO DISTRICT"; "MARKET STREET PHILADELPHIA PA 19101"; "No phone number available." *See* Exhibit B, the page of Plaintiff's Experian personal credit report showing the judgment at issue here.

38.     Thus, even in its personal credit report for Plaintiff, Experian misidentified the Philadelphia Court of Common Pleas, failed to list the court's address, and falsely stated that the court had no telephone number available.

39.     Further, Experian falsely identifies the "PHILADELPHIA CO DISTRICT," instead of LexisNexis, as the "source" that furnished it information about the judgment purportedly lodged against Plaintiff as of July 2010.

40.     With Experian having firmly identified the court as its "source," it then falsely advised Plaintiff in its form response letter that "we contacted the source of the information [*i.e.*,

the court] through an automated verification system or letter."   In fact, Experian did no such thing.

41.     Experian's form response letter further misrepresented that "We asked the source [*i.e.,* the court] to check their records to verify all of the information regarding the item you questioned."  Again, Experian did no such thing.

42.     Experian's form response letter goes on to make the astonishing and false statement that "once we receive the response [from the "source" or "court"], we will send you the results of the investigation."   The reality is that the court never sends any response to Experian because it is not truly contacted by Experian or involved in Experian's reinvestigation process in any way.

43.     The Philadelphia Court of Common Pleas here had an accurate order and docket reflecting that the default judgment has been "opened" as of May 10, 2010, and thus no longer existed as of that date.  Philadelphia Court of Common Pleas was never contacted by Experian, and thus never reviewed its records, verified the judgment or responded to Experian.

44.     Indeed, Experian's form response letter to Plaintiff and to thousands of other consumers is nothing but a sham, intended to hide the facts that: (a) Experian does not actually get its public records from public courthouses or government offices; (b) Experian pays only pennies to a private business for distilled and highly unreliable public records information that it places on consumer credit reports; (c) Experian does not really investigate or reinvestigate public records disputes, that it pushes off on LexisNexis; and that (d) Experian does not actually contact courthouse or government offices before it determines that harmful public records should "remain" on consumers' credit reports.

45.     To make matters worse, with its response form letters, Experian burdens courthouse and government offices with consumer complaints stemming from Experian's own misleading credit reporting and reinvestigation practices.   The form response letter advised consumers that "If you question the results of our investigation, then you want to contact the source of the information [*i.e.*, the court] directly."

44.     Nowhere on personal credit reports or its form response letters does Experian disclose that its actual source of public records information is LexisNexis, and not the public courthouse or other government offices.

45.     At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard for a consumer's rights as set forth under section 1681i of the FCRA, and further assumed an unjustifiably high risk of harm.

46.     At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

## V.      Class Action Allegations

47.     Plaintiff brings this action individually and as a class action, pursuant to Rules 23(a) of the Federal Rules of Civil Procedure, on behalf of the following Class:   All persons in the United States and its Territories to whom, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, in response to a dispute, Defendant sent a letter in the form of the response letter attached hereto as Exhibit A.

48.     The Class is so numerous that joinder of all members is impracticable.   Although the precise number of Class members is known only to Defendant, Defendant handles thousands

of consumer disputes and reinvestigations of public records information, and Defendant's uniform practice and procedure is to send form letters in response which misrepresent its reinvestigation activities. Accordingly, Plaintiff estimates that the class size numbers in the hundreds, if not thousands.

49.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal question is whether the Defendant violated the FCRA by misrepresenting its reinvestigation activities when responding to a dispute it received from a consumer who disputed the accuracy of a public record that Experian was reporting.

50.     Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

51.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

52.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

53.     Whether a consumer was sent one of Experian's false reinvestigation response form letters can be easily determined by a ministerial inspection of Defendant's business records.

54.     A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA.  Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendant's records.

## VI.   Claims

### Count One - FCRA

55.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

56.     At all times pertinent hereto, Defendant was a "person" and "consumer reporting agency" ("CRA") as those terms are defined by 15 U.S.C. §§ 1681a(b) and (f).

57.     At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

58.     Pursuant 15 U.S.C. § 1681i, if a consumer disputes the completeness or accuracy of information appearing in his or her credit report with a CRA, the CRA must either conduct a reinvestigation of that dispute or delete the information.  If the CRA conducts a reinvestigation, it must provide the consumer written notice of the results of its reinvestigation, and upon request from the consumer, a description of the reinvestigation procedure and the contact information of its furnishing source, including name, address and telephone number, if available.

59.     Pursuant to 15 U.S.C. § 1681n, Defendant is liable to the Plaintiff for misrepresenting and willfully misstating the results of its reinvestigation and its reinvestigation procedure in violation of 15 U.S.C. §1681i(a)(6)(B)(iii).

## VII.   Jury Trial Demand

60.      Plaintiff demands trial by jury on all issues so triable.

## VIII.   Prayer For Relief

WHEREFORE, Plaintiff seeks judgment in his favor for the following:

(a)     That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

(b)     That an order be entered declaring that Defendant's actions as described above are in violation of the FCRA;

(c)     That judgment be entered against Defendant for statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member, pursuant to 15 U.S.C. § 1681n(a);

(d)     That judgment be entered against Defendant for punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

(f)     That the Court award costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and 1681o; and

(g)   That the Court grant such other and further relief as may be just and proper.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

BY:   */s/ John Soumilas*
JAMES A. FRANCIS
MARK D. MAILMAN
JOHN SOUMILAS
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**DONOVAN SEARLES, LLC**
DAVID A. SEARLES
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
(215) 732-6067

ROBERT S. SOLA
**ROBERT S. SOLA, P.C.**
8835 SW Canyon Lane, Suite 130
Portland, OR  97225
(503) 295-6880

Attorneys for Plaintiff

Dated: August 25, 2010

# EXHIBIT A



**Experian**
A world of insight.

Report date
July 21, 2010
www.experian.com/disputes
P.O. Box 2002, Allen, TX 75013

Page 1 of 2

Prepared for:
RAYVON SAPP
Report number
81-04

**Dear RAYVON SAPP,**

If you question the results of our investigation, then you may want to contact the source of information directly. Please refer to your original personal credit report for the business or public records office name, address, and phone number (if available) of the source of the information.

When you question information on your personal credit report and tell us specifically why you believe the information is inaccurate or incomplete, we

***************MIXED AADC 530
0003340  1 MB 0.379 L 721
RAYVON SAPP

PHILADELPHIA PA 19151-2211



contact the source of the information through an automated verification system or letter. We ask the source to check their records to verify all of the information regarding the item you questioned, and report back within 30 days of the date that we received your request (21 days for Maine residents and 45 days for investigation of information on an annual free credit report). Once we receive the response, we will send you the results of the investigation. If we do not receive a response within the required investigation period, we will update the item as you have requested or delete the information, and send you the results. When we complete our investigation process we will send you the results. Should you need to contact us again, please be sure to reference the Report Number at the top of this letter. To check the status of your investigation, you may log on to www.experian.com/consumer.

Sincerely,

Experian
NCAC
P.O. Box 2002
Allen TX 75013



**Experian**
A world of insight

**Prepared for**
RAYVON SAPP
**Report number**
81-04

**Report date**
July 21, 2010
www.experian.com/disputes
P.O. Box 2002, Allen, TX 75013

**Page 2 of 2**

THIS PAGE INTENTIONALLY LEFT BLANK

0206973340    L-721-03340-0101000

# EXHIBIT B



**Experian**
A world of insight

**Prepared for**
RAYVON E SAPP

**Report number**
86-98

**Report date**
July 22, 2010
www.experian.com/disputes
P.O. Box 2002, Allen, TX 75013   **Page 3 of 22**

## Potentially negative items or items for further review

This information is generally removed seven years from the initial missed payment that led to the delinquency. Missed payments and most public record items may remain on the credit report for up to seven years, except Chapters 7, 11 and 12 bankruptcies and unpaid tax liens, which may remain for up to 10 years. A paid tax lien may remain for up to seven years. Transferred accounts that have not been past due remain up to 10 years after the date the account was transferred.

### Public records

**PHILADELPHIA CO DISTRICT**
MARKET STREET
PHILADELPHIA, PA 19101
*No phone number available*

| Identification number | Date filed | Responsibility | Claim amount | Status: Civil claim judgment. Plaintiff: |
|---|---|---|---|---|
| 1088 | Feb 2009 | Individual | $7,808 | WEST PHILA FINANCIAL SERVICES IN. This item is scheduled to continue on record until Feb 2016. |
| | *Date resolved:* NA | | *Liability amount* NA | This item was verified on Sep 2009 and remained unchanged. |
| | | | | Address identification number: 3990 1481 |

### Credit items

**HOME DEPOT/CITIBANK**
PO BOX 6497
SIOUX FALLS SD 57117
(800) 677-0232

*Partial account number* ......

| Date opened | Date of status | Type | Responsibility | Credit limit or original amount | Recent balance | Status: Closed. |
|---|---|---|---|---|---|---|
| May 2007 | Jul 2010 | Revolving | Individual | $6,500 | $0 as of Jul 2010 | Account history: 30 days past due as of Aug 2009 |
| *Reported since* Apr 2008 | *Last reported* Jul 2010 | *Terms* NA | | *High balance* $6,350 | | Aug 2009. |
| | | *Monthly payment* $48 | | *Recent Payment* $93 | | Comment: "Account closed at consumer's request and in dispute under FCRA." |
| | | | | | | This item was verified and updated on Aug 2009. |
| | | | | | | Address identification number: 4086 0971 |

*See history of account balances for additional information.*